**NOT FOR PUBLICATION**

|  |  |  |
|---|---|---|
| | : | |
| EMILY DOCHERTY, JOSEPH SMALL, | : | |
| JERMAINE MILLS, AND FREDERICK | : | |
| SCHARTNER individually and on | : | |
| behalf of all similarly | : | |
| situated persons, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 15-8785 (RMB) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| CAPE MAY COUNTY, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

APPEARANCES:

SURINDER K. AGGARWAL
Law Offices Of Surinder K. Aggarwal
P.O. BOX 3370
HOBOKEN, NJ 07030
       On behalf of Plaintiffs

RICHARD GOLDSTEIN, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
       On behalf of Defendants Cape May County, Cape May
County Sheriff's Department, Sheriff Gary Schaffer, and Warden
Donald J. Lombardo

**BUMB**, United States District Judge

This matter comes before the Court upon the Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint[1] ("Defs' Mot. to Dismiss," ECF No. 42); Plaintiffs' brief in opposition to Defendants' motion to dismiss ("Pls' Brief," ECF No. 52); Defendants' reply brief ("Defs' Reply", ECF No. 54); and Plaintiff Schartner's Sur-reply. ("Pl's Sur-reply," ECF No. 62.) For the reasons discussed below, the Court will grant in part, and deny in part, Defendants' motion to dismiss.

I.   BACKGROUND

Plaintiff Emily Docherty was an inmate at Cape May County Correctional Center ("CMCCC") at the time she filed this putative class action on December 21, 2015. (Compl., ECF No. 1, ¶2.) On October 7, 2016, Plaintiffs Emily Docherty, Joseph Small, Jermaine Mills, and Frederick Schartner filed a Second Amended Putative Class Action Complaint against Cape May County, Cape May County Sheriff's Dept., Cape May County Sheriff Gary Schaffer, Warden Donald J. Lombardo, Commissioner Gary M. Lanigan, and unknown Corrections Officers. (Second Am. Compl., ECF No. 30.)

Plaintiffs alleged that overcrowded and unsanitary conditions at Cape May County Correctional Center ("CMCCC")

---

[1] In this Opinion, the Court will refer to Defendants Cape May County and Cape May County Sheriff's Dept. as the "County Defendants," and will refer to Defendants Sheriff Gary Schaffer and Warden Donald J. Lombardo as the "Individual Defendants."

violate the Fourteenth Amendment rights of pretrial detainees (Count I) and the Eighth Amendment rights of sentenced inmates (Count II). (Id., ¶¶23-47.) The alleged conditions include, among others, routinely housing over 300 inmates, male and female, in a facility that was built to accommodate 188 inmates; three inmates housed in a two-inmate cell, causing one inmate to sleep on the floor next to the toilet; overflowing toilets and inoperable drains in the showers; insect infestation; black mold and bacteria exposure, causing illness; rainwater entering the cells; and an unsanitary ventilation system, causing respiratory problems. (Id.)

On behalf of female sentenced inmates and pretrial detainees, Plaintiff Emily Docherty alleges inmates are not provided adequate feminine hygiene products or toilet paper, resulting in the inmates being forced to wear dirty clothing until clean laundry is provided (Count III). (Second Am. Compl., ¶¶48-52.)

On behalf of sentenced inmates and pretrial detainees who are Muslims, Plaintiff Jermaine Mills alleges denial of their First Amendment right to practice the essential elements of their religion (Count IV), and denial of their Fourteenth Amendment right to equal protection under the law (Count V). (Id., ¶54.) The Koran mandates that Jumu'ah, (Friday Prayer) must be held congregationally. (Id., ¶54.) Defendants

allegedly forced Muslim inmates to congregate during Jumu'ah in an entrance to the yard near the dog cages. (Id., ¶¶55-56.) Inmates urinate and defecate in the dog cages when they are held there during lockdowns or searches of their cells, and the area is not cleaned. (Id.) Allegedly, no other religious groups are forced to congregate in this area. (Id., ¶58.) There are vacant rooms where Muslims could congregate for Jumu'ah. (Id., ¶59.) Due to the conditions in the area provided, Muslim inmates are unwilling to participate in Jumu'ah as a collective group, as required by the tenets of Islam. (Id., ¶60.) Additionally, Plaintiffs allege, Defendants refuse to provide Muslims with study time [Taleem], and no other religious groups are prohibited from studying scripture. (Id., ¶61.)

Plaintiffs allege violations of their right of access to courts due to the unavailability of the grievance procedure in CMCCC. (Id., ¶¶80-85.) If an inmate cannot file a grievance, he or she is unable to challenge the conditions of confinement in court because exhaustion of administrative remedies is required. (Id., ¶84.) Inmates allegedly are prevented from filing grievances in several ways: (1) corrections officers refuse to honor requests for grievance forms; (2) corrections officers tell inmates that issues related to conditions of confinement cannot be grieved; and (3) corrections officers discard request slips for grievances. (Id., ¶¶81-83.)

Plaintiff Frank Schartner alleges a pattern of indifference by Defendants toward Plaintiffs' medical issues and disabilities. (Id., ¶¶63-79.) For example, Schartner is an insulin-dependent diabetic, and a corrections officer refused to allow him to see a medical professional for insulin treatment when requested. (Id., ¶¶64-66.) Defendants refuse to allow inmates with diabetes to test their blood sugar on a regular basis; and they do not provide the diet prescribed by the prison doctors. (Id., ¶76.) Long delays in seeing outside medical specialists are common. (Id., ¶¶69-70.)

Plaintiff Schartner is vision-impaired. (Id., ¶74.) Defendants allegedly do not document that written materials were read aloud or otherwise communicated to vision-impaired inmates. (Id., ¶77.) also, Defendants do not provide a visible means for corrections officers to identify the vision-impaired in the event of an emergency. (Id., ¶78.) On behalf of similarly situated sentenced prisoners and pretrial detainees, Plaintiff Schartner alleges violations of the Americans with Disabilities Act (Count VII), and the Rehabilitation Act (Count VIII). (Id., ¶¶112-23.)

All Plaintiffs allege violations of the New Jersey State Constitution and the New Jersey Civil Rights Act on behalf of all similarly situated inmates (Count IX), based on their allegations in the Second Amended Complaint. (Id., ¶¶124-26.)

Plaintiff Jermaine Mills also alleges violations of the New Jersey Law Against Discrimination on behalf of himself and all similarly situated persons (Count X). (Id., ¶¶127-32.) For relief, Plaintiffs seek damages, costs, attorney's fees, injunctive and equitable relief. (Second Am. Compl., ECF No. 30 at 26-27.)

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), courts may dismiss a complaint for failure to state a claim upon which relief may be granted. A plaintiff need only present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Palakovic v. Wetzel, 854 F.3d 209, 219 (3d Cir. 2017)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (alteration in original)).

"'[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citation and internal quotation marks omitted). A claim is facially plausible if the factual content "'allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.'" Id. Courts assessing the sufficiency of a complaint on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) should first determine the elements a plaintiff must plead to state a claim, and second identify allegations that are no more than conclusions, which are not entitled to the assumption of truth. Palakovic, 854 F.3d at 220 (quoting Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011)(internal quotation marks omitted)(quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). Third, courts should assume well-pleaded factual allegations are true and "then determine whether they plausibly give rise to an entitlement for relief.'" Id.

B.   Exhaustion of Administrative Remedies Pursuant to 42 U.S.C. § 1997e

Defendants contend the Court must dismiss the Second Amended Complaint because the Prison Litigation Reform Act ("PLRA") requires Plaintiffs to exhaust any claims arising under 42 U.S.C. § 1983 before filing suit in federal court. (Brief of Defs. Cape May, Cape May County Sheriff's Dept., Sheriff Gary Schaffer, and Warden Donald J. Lombardo in Supp. of Mot. to Dismiss Pl's Second Am. Class Action Compl. ("Defs' Brief"), ECF No. 42-4 at 4-5.) Defendants assert "there are no references in the Second Amended Complaint to show that exhaustion of the administrative remedies afforded to pretrial detainees could not

have been utilized or would have been an exercise in futility."
(Id. at 13.) They acknowledge Plaintiffs alleged that
corrections officers hindered their efforts to file grievances,
but they contend the allegations were not specific enough.
(Id.)

In response, Plaintiffs argue exhaustion is an affirmative
defense, and they are not required to demonstrate exhaustion in
their complaint. (Pls' Brief, ECF No. 52 at 11.) Nevertheless,
Plaintiffs contend they pled sufficient facts to demonstrate
that no remedies were available for them to exhaust. (Id. at
12.)

42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as are available are
> exhausted.

"[F]ailure to exhaust is an affirmative defense under the
PLRA, and [] inmates are not required to specially plead or
demonstrate exhaustion in their complaints." Jones v. Bock, 549
U.S. 199, 216 (2007). Therefore, the Court denies Defendants'
motion to dismiss for failure to plead exhaustion of
administrative remedies.

The Court will, however, hold a hearing to resolve
Defendants' affirmative defense that Plaintiffs did not properly

exhaust administrative remedies pursuant to 42 U.S.C. §
1997e(a). In Small v. Camden County, the Third Circuit held
that judges may resolve factual disputes regarding PLRA
exhaustion without the participation of a jury. 728 F.3d 265,
271 (3d Cir. 2013). The Court will set a hearing date for this
purpose once discovery as to this issue has been completed.

    C.   Standing to Bring Eighth Amendment Claims

Defendants contend that Plaintiffs cannot state an Eighth
Amendment claim because the Eighth Amendment applies only to
convicted prisoners, and inmates at CMCCC are pretrial
detainees. (Defs' Brief, ECF No. 42-4 at 16.) Plaintiffs
respond that they have standing to sue regarding the conditions
of confinement under the Eighth Amendment because Plaintiff
Emily Docherty was sentenced to Drug Court at the time she
entered this lawsuit on December 21, 2015, and Plaintiff Joseph
Small was sentenced and transferred to Bayside State Prison when
he entered this dispute on September 16, 2016. (ECF No. 52 at
13-14.) In reply, Defendants assert Plaintiffs Emily Docherty
and Joseph Small were pretrial detainees at the time of the
alleged harm, and at the time they entered this dispute.
(Reply, ECF No. 54 at 5.)

"At the core of the standing doctrine is the requirement
that a plaintiff 'allege personal injury fairly traceable to the
defendant's allegedly unlawful conduct and likely to be

redressed by the requested relief.'" County of Riverside v. McLaughlin, 500 U.S. 44, 51 (1991)(quoting Allen v. Wright, 468 U.S. 737, 751 (1984) (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)). Thus, a plaintiff has standing if, at the time she filed the complaint, her "injury was at that moment capable of being redressed." Id.

The parties agree that the Eighth Amendment does not apply to pretrial detainees. They do not agree on whether Plaintiffs Docherty and Small were sentenced prisoners while they were confined in CMCCC, and at the time they entered this dispute. The Second Amended Complaint does not identify whether Emily Docherty or Joseph Small were pretrial detainees, sentenced prisoners or both while they were incarcerated at CMCCC.[2] Upon a 12(b)(6) motion to dismiss, the Court cannot decide facts disputed by the parties. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)(quoting Ransom v. Marrazzo, 848 F.3d 398, 401 (3d Cir. 1988)(on a 12(b)(6) motion to dismiss, the question "is whether 'the facts alleged in the complaint, even if true, fail

---

[2] "Plaintiff, Emily Docherty, is a former female inmate who has been detained and/or housed in the Cape May County Correctional Center on and off from December 21, 2013." (Second Am. Compl., ¶3.) Plaintiff, Joseph Small, is a male inmate who was detained and/or housed in the Cape May County Correctional Center. He was transferred from the Cape May County Correctional Center to Bayside State Prison, where he is presently incarcerated. (Id., ¶4.)

to support the claim.'") Therefore, because the lack of standing to bring an Eighth Amendment claim is not apparent on the face of the Second Amended Complaint, and the parties dispute whether Docherty and Small were sentenced prisoners at the relevant time, the Court denies the motion to dismiss the Eighth Amendment Claims for lack of standing.

D. <u>Counts I and II: Fourteenth and Eighth Amendment Conditions of Confinement Claims</u>

1. <u>Liability of the Individual Defendants</u>

Throughout their brief, Defendants assert that Plaintiffs have failed to allege sufficient facts to state a claim against Sheriff Gary Schaffer ("Schaffer") or Warden Donald J. Lombardo ("Lombardo"). (<u>See</u> <u>generally</u> Defs' Brief, ECF No. 42-4.) Plaintiffs counter that they have alleged Schaffer and Lombardo are aware of the misconduct by corrections officers, and they either participate in or are deliberately indifferent to it. (<u>See</u> <u>generally</u> Pl's Brief, ECF No. 52.) Plaintiffs also allege that Defendants have failed to adopt policies, provide training, and the supervision necessary to ensure that corrections officers are not perpetuating unlawful behavior. (<u>Id.</u>) Finally, Plaintiffs allege that in a November 18, 2014 article published by the Press of Atlantic City, Schaffer admitted that the jail complex was "falling apart" and was "overcrowded". (Second Am. Compl., ECF No. 30, ¶27.)

2. <u>Fourteenth Amendment Claims</u>

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory . . .
> subjects, or causes to be subjected, any
> citizen of the United States or other person
> within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and
> laws, shall be liable to the party injured
> in an action at law, suit in equity, or
> other proper proceeding for
> redress . . . .

To state a claim for relief under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) the deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees against "punishment." <u>Hubbard v. Taylor</u> ("<u>Hubbard I</u>"), 399 F.3d 150, 157-58 (3d Cir. 2005)(citing <u>Bell</u>, 441 U.S. 520 (1979)). In determining whether the complaint fails to state a claim upon which relief may be granted, the court must review the complaint and determine whether the Defendants acted "'for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" <u>Id.</u> at 158 (quoting <u>Bell</u>, 441 U.S. at 538-39); <u>see also Stevenson v. Carroll</u>, 495 F.3d 62, 67 (3d Cir. 2007)).

Unless there is an expressed intent to punish, the court considers whether there is an alternative rational purpose and whether the condition is excessive in relation to that purpose. Id.

Plaintiffs do not allege that Schaffer and Lombardo created or maintained the overcrowded and unsanitary conditions as punishment to the pretrial detainees. Therefore, the Court considers alternative purposes for the conditions. There is a legitimate governmental purpose in managing and maintaining an overcrowded detention facility. Hubbard v. Taylor ("Hubbard II"), 538 F.3d 229, 233 (3d Cir. 2008); Union County Jail Inmates v. DiBuono, ("Union County") 713 F.2d 984, 993 (3d Cir. 1983)(quoting Bell, 441 U.S. at 540).

The overcrowded and unsanitary conditions described in the Second Amended Complaint, in their totality, are excessive to the legitimate governmental purpose because the conditions pose a risk to the health and safety of the inmates. See Tillery v. Owens, 907 F.2d 418, 427-28 (3d Cir. 1990)(affirming district court finding that totality of conditions caused by overcrowding violated Eighth Amendment.) By virtue of their duties, as alleged by Plaintiffs, Schaffer and Lombardo are personally involved in the operating the facility in the overcrowded and unsanitary conditions. Therefore, the Court denies Defendants'

motion to dismiss the Fourteenth Amendment claims of pretrial detainees against the Individual Defendants.

      3. <u>Eighth Amendment Claims</u>

The Eighth Amendment protects convicted and sentenced prisoners from cruel and unusual punishment. <u>Hubbard I</u>, 399 F.3d 150, 164 (3d Cir. 2005). To state an Eighth Amendment claim based on conditions of confinement, the prisoner must allege facts indicating "that prison officials acted with deliberate indifference that deprived him/her of 'the minimal civilized measure of life's necessities.'" <u>Id.</u> at 164-65 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298-88 (1991)(quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. <u>Wilson</u>, 501 U.S. at 304.

Indifference may be established by the response to a prisoner's needs or by intentional deprivation of a need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "Use of 'deliberate,' . . . arguably requires nothing more than an act (or omission) of indifference to a serious risk that is voluntary, not accidental." <u>Farmer v. Brennan</u>, 511 U.S. 825, 840

(1994)(comparing <u>Estelle</u>, 429 U.S. at 105.) "And even if 'deliberate' is better read as implying knowledge of a risk, the concept of constructive knowledge is familiar enough that the term 'deliberate indifference' would not, of its own force, preclude a scheme that conclusively presumed awareness from a risk's obviousness." <u>Id.</u> at 841.

The conditions alleged, in their totality, potentially deprive inmates of the basic human necessities of sleep, sanitation, and health. Plaintiffs alleged that Schaffer, in December 2014, was quoted in a newspaper saying the facility was "overcrowded" and "falling apart." Consistent with this statement, Plaintiffs alleged CMCCC has inoperable plumbing, showers that do not drain, bacteria and mold and inadequate ventilation. Plaintiffs allege these conditions existed long after Schaffer allegedly made this statement to the newspaper, creating a reasonable inference that Schaffer did nothing to alleviate the conditions. Therefore, the Court denies the motion to dismiss the Eighth Amendment claim against Schaffer.

Additionally, it is possible to establish deliberate indifference under the Eighth Amendment based on the obviousness of a risk. <u>See</u> <u>Beers Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001)("subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known

of the risk")(quoting <u>Farmer</u>, 511 U.S. at 842. Accepting the allegations regarding the condition of the facility as true, and accepting the allegation that it is Warden Lombardo's duty to manage, maintain and operate the CMCCC, the Second Amended Complaint creates a reasonable inference that Lombardo was aware of the overcrowded and unsanitary conditions and did nothing to alleviate them. Thus, the Court denies the motion to dismiss the Eighth Amendment Claim against Lombardo.

### 4. Qualified Immunity for the Individual Defendants

Defendants assert that all claims of individual liability of Schaffer and Lombardo must be dismissed because they are protected by qualified immunity. (Defs' Brief, ECF No. 42-4 at 23.) First, Defendants contend Schaffer's and Lombardo's actions in performing their duties are objectively reasonable. (<u>Id.</u> at 26.) Second, they contend Plaintiffs' allegations offer no basis to overcome qualified immunity. (<u>Id.</u>)

Third, Defendants argue that Plaintiffs have not identified specific actions of Schaffer or Lombardo that violate their constitutional rights. (<u>Id.</u>) Fourth, Defendants argue that Plaintiffs failed to plead "how their claims overcome the protections afforded to public officials working in their official capacity."[3] (<u>Id.</u>) Defendants conclude that Schaffer

---

[3] The test for qualified immunity of prison officials sued in their individual capacity is not dependent on whether the

and Lombardo "were objectively reasonable in believing that their actions in enforcing the policies and maintaining the Cape May County Correctional Center were under the umbrella of their discretionary function and therefore is entitled to qualified immunity." (Id.)

Plaintiffs assert that it is a defendant's burden to establish that he is entitled to qualified immunity, and Defendants here have attempted to shift this burden to Plaintiffs. (ECF No. 52 at 29.) Plaintiffs also argue the Court should address qualified immunity only after the record is fully developed. (Id. at 30-31.)

In reply, Defendants assert that qualified immunity is an immunity from suit that should be decided before trial. (ECF No. 54 at 9.) They further contend that "nothing about plaintiffs' allegations proves that the constitutional rights of pretrial detainees were clearly established to overcome the two-part test set forth in Saucier v. Katz, 533 U.S. 194 (2001). . ." (Id.)

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

---

officials were acting within the scope of employment of their official duties. See Hafer v. Melo, 502 U.S. 21, 31 (1991)("state officers [are not] absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts.")

of which a reasonable person would have known." <u>Pearson v.</u> <u>Callahan</u>, 555 U.S. 223, 231 (2009)(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Qualified immunity is immunity from suit, and should be resolved as early as possible. <u>Id.</u> at 231-32. It protects from suit "all but the plainly incompetent or those who knowingly violate the law." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743 (2011)(quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

There are two steps for resolving qualified immunity claims, but the steps may be addressed in any sequence. <u>Pearson</u>, 555 U.S. at 232. In other words, courts need not first determine whether the facts alleged by the plaintiff state a violation of a constitutional right before addressing whether such a right was clearly established at the time of the defendant's alleged misconduct. <u>Id.</u> at 236.

A defendant has not violated a clearly established right unless the contours of that right were "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating [the right.]" <u>Plumhoff v.</u> <u>Rickard</u>, 134 S.Ct. 2012, 2023 (2014)(citing <u>Ashcroft v. al-Kidd</u>, 131 S.Ct. 2074, 2083-84 (2011)). Stated another way, "'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" <u>Id.</u> Furthermore, courts should not define clearly established law

"at a high level of generality" because to do so avoids the question of whether the official acted reasonably in the particular circumstances. <u>Id.</u>

A plaintiff has no obligation to plead a violation of clearly established law in anticipation of a qualified immunity defense. <u>Thomas v. Independence Tp.</u>, 463 F.3d 285, 293 (3d Cir. 2006). However, "when a plaintiff, *on his own initiative*, pleads detailed factual allegations, the defendant is entitled to dismissal before the commencement of discovery unless the allegations state a claim of violation of clearly established law." <u>Id.</u> (emphasis in original)(citing <u>Mitchell v. Forsythe</u>, 472 U.S. 511, 526 (1985)).

This Court has found that the allegations of the Second Amended Complaint state a Fourteenth Amendment Due Process conditions of confinement claim and an Eighth Amendment conditions of confinement claim against Defendants Schaffer and Lombardo. Thus, the Court must determine whether Plaintiffs pled detailed factual allegations that demonstrate their allegations do not state a claim for violation of clearly established law.

Triple-celling alone does not violate clearly established law. <u>Hubbard II</u>, 538 F.3d at 234. Courts, however, must consider the totality of the circumstances of the conditions alleged. Here, Plaintiffs allege they were triple-celled, with

one person required to sleep on the floor, in unsanitary conditions, with inoperable plumbing, insect infestation and poor ventilation. See Union County, 713 F.2d at 999 ("[t]he totality of circumstances relevant to this inquiry comprises all those circumstances that bear on the nature of the shelter afforded to sentenced inmates")(citing Hoptowit v. Ray, 682 F.2d 1237, 1247 (9th Cir. 1982)).

The Second Circuit Court of Appeals has "long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." Walker v. Schult, 717 F.3d 119, 127 (2nd Cir. 2013)(citing Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981)(noting that prisoners are entitled to sanitation); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972)("causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted"); Gaston v. Coughlin, 249 F.3d 156, 166 (2nd Cir. 2001)(inmate stated an Eighth Amendment claim where the area in front of his cell "was filled with human feces, urine, and sewage water" for several consecutive days.") The Tenth Circuit has recognized that "a state must provide . . . reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)."

Ramos v. Lamm, 639 F.2d 559, 566 (10th Cir. 1980)(quoting Battle
v. Anderson, 564 F.2d 388, 394-95, 403 (10th Cir. 1977.))

Similarly, the Third Circuit has found that the denial of
"basic sanitation ... is cruel and unusual because, in the worst
case, it can result in physical torture, and, even in less
serious cases, it can result in pain without any penological
purpose." Young v. Quinlan, 960 F.2d 351, 365 (3d Cir. 1992).
Finally, it is clearly established by the Supreme Court that
prison conditions, which in combination, "deprive inmates of the
minimal civilized measure of life's necessities," violate the
Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

The Fourteenth Amendment provides greater protection to
pretrial detainees than the Eighth Amendment provides to
convicted prisoners because pretrial detainees may not be
subjected to punishment, whereas convicted prisoners may not be
subjected to cruel and unusual punishment. Hubbard I, 399 F.3d
at 166. The Court, again construing the allegations in favor of
the Plaintiffs, finds that the Second Amended Complaint does not
demonstrate that Plaintiffs will be unable to establish that
clearly established law supports violations of the Eighth and
Fourteenth Amendments. The Court denies the motion to dismiss
Counts I and II based on the qualified immunity defense asserted
by Schaffer and Lombardo.

E.  Count III:  Denial of Adequate Hygiene Products,
    Toilet Paper, and Clothing to Female Sentenced Inmates
    and Pretrial Detainees

Defendants argue that Count III, the denial of the right to basic cleanliness on behalf of Emily Docherty and all similarly situated pretrial detainees, must be dismissed because Plaintiffs fail to provide a sufficient factual basis to substantiate the constitutional claims. (Defs' Brief, ECF No. 42-4 at 27.) Defendants contend allegations that the feminine hygiene products and toilet paper were "insufficient" are too vague to state a constitutional violation. (Id. at 28.)

As discussed above, the first step in analyzing a Fourteenth Amendment conditions of confinement claim is whether there are allegations that the conditions were the result of an intention to punish pretrial detainees. Bell, 441 U.S. at 538 (1979); see e.g. Parkell v. Morgan, No. 15-2719, 2017 WL 955250, at *2 (3d Cir. Mar. 10, 2017). Here, Plaintiffs do not allege the conditions were imposed as punishment.

Next, the Court must consider whether any legitimate purpose is served by the condition. Id. There is a legitimate governmental purpose in managing overcrowded conditions in a correctional facility. Hubbard II, 538 F.3d at 233. The third step is for the Court to determine whether the conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become

22

excessive in relation to the purposes assigned to them." Hubbard I, 399 F.3d at 159-60 (quoting Union County, 713 F.2d at 992 (citing Bell, 441 U.S. at 542)(internal quotation marks omitted).

The allegations do not establish that the hygiene products provided to female pretrial detainees are so inadequate as to be excessive to the purpose of operating CMCCC in its overcrowded condition. If hygiene products were inadequate for only a short period of time, the lack of adequate hygiene products for female pretrial detainees may not be excessive to the legitimate governmental purposes. See Brown v. Hamilton Police Dept., Civ. Action No. 13-260(MAS), 2013 WL 3189040, at *3 (D.N.J. June 21, 2013)(denial of feminine hygiene products for a few hours fails to state a claim).

On the other hand, if the lack of adequate hygiene products for female pretrial detainees was a chronic problem that deprived detainees of adequate hygiene for more than a short period of time, the condition may be excessive to the legitimate governmental purposes. Therefore, the Court grants the motion to dismiss the Fourteenth Amendment Claim in Count III as to all defendants, and the Fourteenth Amendment Claim in Count III is dismissed without prejudice. The Court need not address the qualified immunity defense to this claim.

Plaintiffs also alleged the denial of sufficient hygiene products to female sentenced inmates violated the Eighth Amendment. (Second Am. Compl., ¶¶95, 96.) For the same reasons that Plaintiffs failed to state a claim that the deprivation amounted to punishment under the Fourteenth Amendment, they have also failed to state a claim that the deprivation constituted cruel and unusual punishment. The Court grants the motion to dismiss the Eighth Amendment Claim in Count III as to all defendants, dismissal is without prejudice.

F.  Count IV: First Amendment Free Exercise Claims

Defendants argue Plaintiff Mills fails to state a First Amendment Free Exercise claim. (Defs' Brief, ECF No. 42-4 at 17-18.) They assert that the CMCCC has given Muslim detainees a way to congregate and pray, but any further accommodations "will be against the interest of order and security." (Id. at 17.)

Defendants have raised issues of fact which are not pled in the Second Amended Complaint. Defendants assert that:

> According to the Cape May County Correctional Facility, the population of Muslim pretrial detainees at any given point is a small fraction as compared to other religions. The number of Muslim pretrial detainees is so few that an Imam, an Islamic leader to conduct the Islamic services, could not be called to the prison to hold religious services. . . . Additionally, due to the sparse Muslim detainee population, the Cape May County Correctional Facility has an overriding interest in preserving internal order for other pretrial detainees

and to maintain the security of the
                         facility.

(Id. at 17.) The Court must decide the motion to dismiss based
on the facts alleged in the Second Amended Complaint, and any
reasonable inferences drawn from those facts.  See Iqbal, 556
U.S.at 679 ("[when there are well-pleaded factual allegations, a
court should assume their veracity and then determine whether
they plausibly give rise to an entitlement to relief.")

     "The threshold question in any First Amendment . . . case
is whether the prison's challenged policy or practice has
substantially burdened the practice of the inmate-plaintiff's
religion.  See Robinson v. Superintendent Houtzdale SCI, ---F.
App'x---, 2017 WL 2627917, at *3 (3d Cir. 2017)(per
curiam)(citing Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir.
June 19, 2007)).  "'When a prison regulation impinges on
inmates' constitutional rights, the regulation is valid if it is
reasonably related to legitimate penological interests.'"
Garraway v. Lappin, 490 F. App'x 440, 445 (3d Cir. 2012)(quoting
Turner[v. Safely], 482 U.S. [78,] 89 [1987].

     Plaintiffs allege that the CMCCC's policy that Muslim
inmates may only congregate for Jumu'ah near the dog cages at
the entrance to the yard substantially burdens a tenet of Islam.
(Second Am. Compl., ECF No. 30, ¶¶53-62.)  Islam requires
congregation for Friday prayer but the dirty, foul-smelling

                              25

conditions where they are allowed to congregate are so offensive that inmates choose not to congregate. (Id.) They further allege there are vacant rooms where Muslims could congregate. (Id.)

Plaintiffs have met the threshold pleading requirement for their First Amendment Free Exercise claim. At the motion to dismiss stage, the Court cannot consider facts not alleged in the complaint in support of the defense that allowing Plaintiffs to congregate only near the dog cages is reasonably related to legitimate penological interests. Cf. Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003)(affirming district court order granting summary judgment to prison officials based on findings of fact that prison officials had a legitimate penological interest that was rationally related to providing Muslim inmates a vegetarian meal, rather than one with Halal meat.) Therefore, the Court denies Defendants' motion to dismiss Count IV against the County Defendants.

Defendants also move to dismiss the First Amendment Free Exercise claims against Defendants Schaffer and Lombardo for failure to allege their personal involvement in the alleged constitutional violation. (Defs' Brief, ECF 42-4 at 28.) "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Plaintiffs do not

allege who created, approved or enforced the policy that Muslims may only congregate for Jumu'ah near the dog cages. Plaintiffs' conclusory claims that Schaffer and Lombardo were aware of the alleged misconduct and failed to correct it are insufficient to allege their personal involvement. See Santiago, 629 F.3d at 131 (reciting elements of supervisory claim under § 1983 is insufficient to state a claim). At a minimum, Plaintiffs must allege how Schaffer and Lombardo became aware of the burden on their religion or they must allege other facts concerning their involvement in making or enforcing the policy concerning Jumu'ah.

Plaintiffs have also alleged "Defendants have failed to adopt policies or provide the training and oversight necessary to insure that corrections officers are not perpetuating such unlawful behavior." (Compl., ECF No. 30, ¶62.) To state a § 1983 claim against an individual supervisory defendant, a plaintiff must allege that Defendants "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Barkes v. First Corr. Medical Inc., 766 F.3d 307, 316 (3d Cir. 2014)(internal quotations omitted) reversed on other grounds by Taylor v. Barkes, 135 S.Ct. 2042 (2015). "'Failure to' claims—failure to train, failure to

discipline, or . . . failure to supervise—are generally considered a subcategory of policy or practice liability." <u>Id.</u>

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. <u>Sample [v. Diecks]</u>, 885 F.2d [1099], 1118 [1989]; <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205 (3d Cir. 2001).

<u>Id.</u> at 317.

Plaintiffs' First Amendment Free Exercise claim against the Individual Defendants fails because Plaintiffs did not identify a particular policy, practice or training that the supervisors failed to employ, nor did they plead that the injury was caused by the failure to implement such policy, practice or training. The Court grants Defendants' motion to dismiss Count IV against the Individual Defendants; dismissal is without prejudice. Therefore, the Court need not address the qualified immunity defense.

## G. <u>Count V: Equal Protection Claims</u>

Defendants contend that because CMCCC has given Muslim detainees a way to congregate and pray, the Court should dismiss

Plaintiff's equal protection claims. (Defs' Brief, ECF No. 42-4 at 17.) Plaintiffs counter that they have pled sufficient facts to support an equal protection claim, including: (1) Defendants force Plaintiff Mills and other Muslim inmates to conduct congregational prayer near the dog cages where inmates routinely urinate and defecate; (2) no other religious group is compelled to worship in an area like this; (3) the library and law library at CMCCC have vacant rooms where Muslims could congregate for prayer; (4) Muslim inmates are denied time to study their scripture; and (5) no other religious groups are prohibited from studying their scriptures. (Pls' Brief, ECF No. 52 at 20-21.) In reply, Defendants state, "[t]he Cape May County Correctional Facility has given Muslim detainees a way to congregate and pray, but providing further accommodations will be against the interest of order and security." (Defs' Reply, ECF No. 54 at 6.)

To state an equal protection claim, a plaintiff must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class, such as religious affiliation." Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016). By alleging no other religious groups were compelled to worship in a dirty and foul-smelling area, and no other religious groups were

prohibited from studying their scriptures, the allegations in the Second Amended Complaint create a reasonable inference that the County Defendants intentionally discriminated against Plaintiffs because they are Muslim. Therefore, the Court denies Defendants' motion to dismiss Count V against the County Defendants.

Plaintiffs allege only conclusory allegations regarding the personal involvement of Schaffer and Lombardo in the Equal Protection Claims. They do not allege how Schaffer or Lombardo knew of and condoned the policy or practice of allowing Muslims to congregate for Jumu'ah only near the dog cages. Plaintiffs do not identify a particular policy, practice or training that the supervisors failed to employ that caused the injury. The Court grants Defendants' motion to dismiss Count V against the Individual Defendants; dismissal is without prejudice. The Court need not address the qualified immunity defense.

H. Count VI: First Amendment Right To Petition to Redress Grievances

Defendants argue that Plaintiffs fail to state a First Amendment claim for denial of access to the courts because they have not alleged a direct injury. (Defs' Brief, ECF No. 42-4 at 29.) Plaintiffs maintain that Defendants hindered their ability to file grievances, which hinders their ability to access the courts. (Pls' Brief, ECF No. 52 at 33-34.)

"'[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 387 (2011) (quoting Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 896-897 (1984)). To establish a First Amendment violation based on denial of the right to access the courts, a plaintiff must have suffered an actual injury, such as the dismissal of a complaint or the inability to file a complaint. Lewis v. Casey, 518 U.S. 343, 351, 354 (1996).

Plaintiffs were not precluded from filing this action due to their alleged inability to exhaust the remedies provided by CMCCC to address their grievances. The failure to exhaust remedies under 42 U.S.C. § 1997e(a) only results in dismissal of the unexhausted claims if the remedies were available to the prisoners. See Ross v. Blake, 136 S.Ct. 1850, 1860 (2016)("appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable.") If Plaintiffs can establish that the remedies were unavailable to them, they will have suffered no injury to their right of access to the courts. Therefore, Plaintiffs fail to state a First Amendment claim that they were denied access to

the courts.  The Court grants Defendants' motion to dismiss Count VI as to all defendants.  Dismissal is with prejudice.

I.  <u>Counts VII and VIII:  ADA and RA Claims</u>

Defendants contend that neither the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, nor Section 504 of the Rehabilitation Act, 42 U.S.C. § 794, creates a federal cause of action for prisoners challenging the medical treatment they are provided.  (Defs' Brief, ECF No. 42-4 at 19, 22, 23.)  In response, Plaintiffs assert state prisons are public entities, and diabetes qualifies as a disability under the ADA.  (Pls' Brief, ECF No. 52 at 25-26.)  They argue that Plaintiff Schartner states a claim by alleging sufficient facts to show discriminatory denial of access to medical treatment.  (<u>Id.</u> at 26.)  They allege insulin-dependent inmates can only see medical personnel for insulin treatment at the discretion of corrections officers.  (<u>Id.</u>)

> Section 504 of the [Rehabilitation Act ("RA")] provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

<u>Liberty Resources, Inc. v. Philadelphia Housing Authority</u>, 528 F.Supp.2d 553, 564 (E.D. Pa. 2007)(quoting 29 U.S.C. § 794(a)).  "Title II [of the ADA] prohibits a 'qualified individual with a

disability' from being 'excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity' because of the individual's disability." 42 U.S.C. § 12132. "Title II of the ADA, 42 U.S.C. §§ 12131–12134, incorporates the 'non-discrimination principles' of section 504 of the Rehabilitation Act and extends them to state and local governments." Helen L. v. DiDario, 46 F.3d 325, 331 (3d Cir. 1995).

Plaintiffs do not allege that Defendants exclude insulin-dependent inmates from receiving medical treatment. Their claim is that corrections officers determine when inmates can access medical services. Plaintiffs have not alleged that corrections officers permit other inmates to access medical treatment without delay. These facts do not support the conclusion that, solely by reason of their disability, Defendants discriminate against insulin-dependent inmates. Furthermore, no cause of action exists under the ADA to challenge the medical treatment a prisoner received. Hubbard v. Taylor, 452 F.Supp.2d 533, 544-45 (D. Del. 2006). Plaintiffs' allegations do not state an ADA claim under 42 U.S.C. § 12132 or an RA claim under 29 U.S.C. § 794(a).

The Second Amended Complaint also contains the following allegations:

Defendants are providing written materials, such as the Prisoner's Handbook, which contains the Cape May County Correctional Center's rules and regulations, to vision impaired inmates without documenting that such materials were read aloud or otherwise communicated to these inmates. Such action discriminates against inmates with vision impairment inasmuch as Defendants are denying them access to the grievance procedure and of services, programs and/or activities of the Cape May County Correctional Center that are provided to other inmates.

Defendants also fail to reasonably accommodate vision-impaired inmates by not providing them with any type of vest or other visible means by which corrections officers can identify them as vision-impaired in the event of an emergency.

(Second Am. Compl., ¶¶77-78.)

Plaintiffs have not alleged that CMCCC does not communicate the information in the Prison Handbook to vision-impaired inmates who cannot read the handbook, only that they do not document that they have done so. These allegations do not state a claim that such inmates are denied access to the services, programs and activities described in the handbook.

Plaintiffs allege that they are not provided with some visible means for corrections officers to identify them as vision-impaired in the event of an emergency. These allegations are insufficient to state a claim that Defendants deprive vision-impaired inmates from access to emergency services, as other provisions may be made for vision-impaired inmates. The

Court will grant Defendants' motion to dismiss Counts VII and VIII against all defendants; dismissal is with prejudice.

J.     Count IX:  NJCRA Claims

Defendants do not separately address the sufficiency of Plaintiffs' claims under the New Jersey Constitution and the NJCRA.

> The NJCRA provides, in part:
>
> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State ... may bring a civil action for damages and or injunctive or other appropriate relief.

N.J. Stat. Ann. §10:6-2(c).

The New Jersey Civil Rights Act is analogous to 42 U.S.C. § 1983 in that it creates a private right of action for violation of civil rights secured by the New Jersey Constitution, the laws of the state of New Jersey, and the Constitution and laws of the United States. See Gormley v. Wood-El, 218 N.J. 72, 97 (N.J. 2014) ("Section 1983 applies only to deprivations of federal rights, whereas N.J.S.A. 10:6-1 to 2 applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws."

"[C]ourts in this district have generally interpreted the NJCRA to be coextensive with its federal counterpart." Estate of Lydia Joy Perry ex rel. Kale v. Sloan, Civ. No. 10-4646 (AET), 2011 WL 2148813, at *2 (D.N.J. May 31, 2011)(citing Jefferson v. Twp. of Medford, 2010 WL 5253296, at *13 (D.N.J. Dec.16, 2010); Celestine v. Foley, 2010 WL 5186145, at *6 (D.N.J. Dec.14, 2010); Chapman v. New Jersey, 2009 WL 2634888, at *3 (D.N.J. Aug.25, 2009); Slinger v. New Jersey, 2008 WL 4126181, at *5 (D.N.J. Sept.4, 2008), rev'd in part on other grounds, 366 F. App'x 357 (3d Cir. 2010)). Therefore, the Court will grant Defendants' motion to dismiss dismiss the claims arising under the New Jersey Constitution and the NJCRA that are coextensive with their federal counterparts, which the Court has dismissed for failure to state a claim.

K.   Count X:  New Jersey Law Against Discrimination Claim

Plaintiffs allege the policy that Muslims may only congregate for Jumu'ah in the yard near the dog cages violates the New Jersey Law Against Discrimination.  Defendants contend this claim should be dismissed because:

> The actions taken by the Cape May County Correctional Facility were rationally related to the legitimate penological interests in security and staying within the prison's resources. Here, there were not enough Muslim pretrial detainees to allow prayer in a larger facility, similar to Christian pretrial detainees, which

> outnumber Muslim detainees greatly in Cape
> May.

(Defs' Brief, ECF No. 42-4 at 18.)  The Court, however, cannot consider facts asserted that were not pled in the Complaint, such as the number of Muslim pretrial detainees or the costs of accommodating the Plaintiffs' religious practices.

The New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A 10:5-12 provides:

> It shall be . . . an unlawful
> discrimination:
> ...
> f. (1) For any owner, lessee, proprietor,
> manager, superintendent, agent, or employee
> of any place of public accommodation
> directly or indirectly to refuse, withhold
> from or deny to any person any of the
> accommodations, advantages, facilities or
> privileges thereof, or to discriminate
> against any person in the furnishing thereof
> . . .

Assuming without deciding that CMCCC is a place of public accommodation as defined in N.J.S.A. 10:5-5(l), Plaintiffs' allegations are sufficient to state a claim for unlawful discrimination in violation of N.J.S.A. 10:5-12.  Unlike § 1983 claims, employers can be vicariously liable under the NJLAD.  See e.g. Bouton v. BMW of North America, Inc., 29 F.3d 103, 110 (3d Cir. 1994)(for employer liability under the NLAD, "the New Jersey Supreme Court held that . . . agency principles should be applied for compensatory damages. . ." (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 626 A.2d 445 (1993).  The Court

denies Defendants' motion to dismiss the NJLAD claim against the County Defendants.

Supervisors are not liable as an employer under the NJLAD. Santiago v. City of Vineland, 107 F.Supp.2d 512, 543 (D.N.J. 2000)(citing Hurley v. Atlantic City Police Department, 174 F.3d 95 (3d Cir. 1999), cert. denied, 528 U.S. 1074 (2000)). Supervisors may, however, be liable under the NJLAD for aiding and abetting a principal who violates the law. Id. at 543-44 (citing Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998)). Supervisors are liable when they "knowingly give[] substantial assistance or encouragement to the unlawful conduct of his employer." Id.

Plaintiffs have not pled who created and enforced the alleged discriminatory policies against Muslim inmates. Therefore, they have not pled facts sufficient to state a claim that Schaffer and Lombardo are liable as supervisors under the NJLAD. The Court will grant Defendants' motion to dismiss the NJLAD claims against Schaffer and Lombardo; dismissal is without prejudice.

### L. Injunctive Relief

Defendants argue that because Plaintiffs Docherty and Small are no longer confined at CMCCC, they no longer have standing to assert a claim for injunctive and declaratory relief; therefore, their claims for injunctive relief must be dismissed. (Defs'

Brief, ECF No. 42-4 at 30-32.)  In response, Plaintiffs Docherty and Smalls rely on the transitory exception to standing for injunctive relief.  (Pls' Brief, ECF No. 52 at 35.)  In the alternative, they submit that Plaintiffs' Mills and Schartner have standing to pursue injunctive relief because they were pretrial detainees when they entered this dispute, and Mills remains a pretrial detainee.  (Id.)  In reply, Defendants maintain that Plaintiffs Docherty, Smalls and Shartner are no longer confined in CMCCC and cannot seek injunctive relief or a declaratory judgment.  (Defs' Reply, ECF No. 54 at 12-13.)

This argument is premature.  In County of Riverside, the plaintiffs brought a class action under 42 U.S.C. § 1983, challenging the manner in which the county provided probable cause hearings to persons arrested without a warrant.  500 U.S. 44, 47 (1991).  The Supreme Court held that where the named plaintiffs were eligible for the injunctive relief sought, a prompt probable cause determination, at the time they filed the second amended complaint, they retained standing to seek injunctive relief even after they had received probable cause determinations because "the termination of a class representative's claim does not moot the claims of the unnamed members of the class."  Id. at 51-52 (citing examples Gerstein v. Pugh, 420 U.S. 103, 110-111, n. 11 (1975)(citing Sosna v. Iowa, 419 U.S. 393 (1975); Schall v. Martin, 467 U.S. 253, 256,

n. 3 (1984)).  The fact that the class was not certified until after the named plaintiffs' claims had become moot did not deprive the court of jurisdiction because "'[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" Id. at 52 (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 399 (1980)).

As in County of Riverside, a pretrial detainee's claim relating to the conditions of pretrial detention is transitory in nature, such that the court may not have time to rule on a motion for class certification before the claim for injunctive relief is moot as to the class representatives.  See Richardson v. Bledsoe, 829 F.3d 273, 286 (3d Cir. 2016)("this mootness exception should apply only in situations where the mooting of the individual claim 'occurred at so early a point in litigation that the named plaintiff could not have been expected to file a class certification motion.'")(quoting Lucero v. Bureau of Collection Recovery Inc., 639 F.3d 1239, 1249 (10th Cir. 2013)(internal quotation marks and citations omitted)). Therefore, the Court denies Defendants' motion to dismiss Plaintiffs' claims for injunctive relief.  Defendants may renew this claim upon a motion for class certification.

M.  Class Certification

Defendants contend that Plaintiffs will not be able to meet the commonality and typicality requirements for class certification because they are attempting to maintain four separate and distinct classes. (Defs' Brief, ECF No. 42-4 at 33-34.) Furthermore, they assert Plaintiffs Emily Docherty and Joseph Small, who are no longer detained at CMCCC, cannot be adequate representatives for their respective classes, mooting the presumption of class certification. (Id. at 33.) Plaintiff Schartner, in his Sur-reply, asserts that Defendants' motion to dismiss the class allegations is premature because there are valid reasons to obtain a ruling on the adequacy of the factual allegations in the complaint before deciding whether the case should proceed as a class action. (ECF No. 62 at 1.)

"Generally courts do not consider whether a proposed class meets the Fed.R.Civ.P. 23 class requirements until after plaintiffs move for class certification." 6803 Blvd. East, LLC v. DIRECTV, Inc., Civ. No. 12–cv–2657(WHW), 2012 WL 3133680, at *2 (D.N.J. July 31, 2012). "A rare exception exists 'where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'" Id. (quoting Landsman & Funk PC v. Skinder–Strauss Associates, 640 F.3d 72, 93 n. 30 (3d Cir. 2011) ("ruling on whether the class could potentially fit within Rule 23 determined on a motion to dismiss was premature.")

Plaintiffs seek to bring a number of claims on behalf of pretrial detainees and sentenced inmates at CMCCC. Although Defendants may ultimately prevail on this issue, the Second Amended Complaint, on its face, does not establish that Plaintiffs cannot meet the requirements of Fed. R. Civ. P. 23(a). Therefore, the Court denies Defendants' motion to dismiss the class claims at this early stage.

III. CONCLUSION

For the reasons discussed above, the Court grants in part, and denies in part, Defendants' motion to dismiss.

An appropriate Order follows.

s/Renée Marie Bumb

RENÉE MARIE BUMB
United States District Judge

Dated: June 29, 2017