**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| EMILY DOCHERTY, JOSEPH SMALL, JERMAINE MILLS, AND FREDERICK SCHARTNER individually and on behalf of all similarly situated persons, | |
| Plaintiffs, | Civil Action No. 15-8785 (RMB) |
| v. | |
| CAPE MAY COUNTY, *et al.*, | **OPINION** |
| Defendants. | |

APPEARANCES:

SURINDER K. AGGARWAL, ESQ.
Law Offices of Surinder K. Aggarwal
P.O. Box 3370
Hoboken, NJ 07030
    On behalf of Plaintiff Shartner

ROBERT A. MORLEY, ESQ.
Morley Law, L.L.C.
1405 Wickapecko Drive, Suite 2
Ocean, N.J. 07712

and

TIMOTHY McILWAIN, ESQ.
McIlwain, LLC
2020 New Road, Suite A
Linden, NJ 08221
    On behalf of Plaintiffs

MARVIN L. FREEMAN
Deputy Attorney General
State of New Jersey
Office of the Attorney General

25 Market Street
P.O. BOX 112
Trenton, NJ 08625
    On behalf of Defendant Lanigan

**BUMB**, United States District Judge

This matter comes before the Court upon Defendant Gary M. Lanigan's ("Lanigan") Motion to Vacate Default and to Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Lanigan's Mot. to Dismiss," ECF No. 48); Plaintiff Schartner's brief in opposition ("Pl. Schartner's Brief", ECF No. 64); Plaintiffs' brief in opposition ("Pls' Brief," ECF No. 66); and Lanigan's reply brief ("Defs' Reply", ECF No. 67.) For the reasons discussed below, the Court will grant Lanigan's motion to vacate default and dismiss the § 1983 and NJCRA claims against him, pursuant to Fed. R. Civ. P. 12(b)(6).

I.   BACKGROUND

Plaintiff Emily Docherty was an inmate at Cape May County Correctional Center ("CMCCC") at the time she filed this putative class action on December 21, 2015. (Compl., ECF No. 1, ¶2.) On October 7, 2016, Plaintiffs Emily Docherty, Joseph Small, Jermaine Mills, and Frederick Schartner filed a Second Amended Putative Class Action Complaint against Cape May County, Cape May County Sheriff's Dept., Cape May County Sheriff Gary Schaffer, Warden Donald J. Lombardo, Commissioner Gary M. Lanigan, and unknown Corrections Officers.  (Second Am. Compl.,

2

ECF No. 30.) Schaffer, Lombardo and Lanigan were sued in their official and individual capacities. (Id.)

Plaintiffs allege that overcrowded and unsanitary conditions at CMCCC violate the Fourteenth Amendment rights of pretrial detainees (Count I) and the Eighth Amendment rights of sentenced inmates (Count II). (Id., ¶¶23-47.) On behalf of female sentenced inmates and pretrial detainees, Plaintiff Emily Docherty alleges inmates are not provided adequate feminine hygiene products or toilet paper, resulting in the inmates being forced to wear dirty clothing until clean laundry is provided (Count III). (Second Am. Compl., ¶¶48-52.)

On behalf of Muslim sentenced inmates and pretrial detainees, Plaintiff Jermaine Mills alleges denial of the First Amendment right to practice the essential elements of their religion (Count IV), and denial of the Fourteenth Amendment right to equal protection under the law (Count V). (Id., ¶¶53-62.)

Plaintiffs allege violation of the right of access to the courts (Count VI) due to the unavailability of the grievance procedure in CMCCC. (Id., ¶¶80-85.) Specifically, if an inmate cannot file a grievance, he or she is unable to challenge the conditions of confinement in court because exhaustion of administrative remedies is required. (Id., ¶84.)

3

On behalf of similarly situated sentenced prisoners and pretrial detainees, Plaintiff Schartner alleges violation of the Americans with Disabilities Act (Count VII) and the Rehabilitation Act (Count VIII). (Id., ¶¶112-23.)

All Plaintiffs allege violations of the New Jersey State Constitution and the New Jersey Civil Rights Act on behalf of all similarly situated inmates (Count IX). (Id., ¶¶124-26.) Plaintiff Jermaine Mills also alleges a violation of the New Jersey Law Against Discrimination on behalf of himself all similarly situated persons (Count X). (Id., ¶¶127-32.) For relief, Plaintiffs seek damages, costs, attorney's fees, injunctive and equitable relief. (Second Am. Compl., ECF No. 30 at 26-27.)

Service was executed upon Lanigan on October 19, 2016. (Executed Summons, ECF No. 40.) Lanigan's Answer was due on November 9, 2016. (Defs' Brief, ECF No. 48-1 at 8.) Plaintiffs requested entry of default against Lanigan on November 11, 2016, and the Clerk of the Court entered default on November 14, 2016. (Default, ECF No. 44.) Lanigan filed the present motion to vacate default and to dismiss the Complaint on December 1, 2016. (Lanigan's Mot. to Dismiss, ECF No. 48.)

On June 29, 2017, the Court granted in part and denied in part Defendants Cape May County, Cape May County Sheriff's Dep't, Sheriff Gary Schaffer, and Warden Donald J. Lombardo's

4

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 72, 73.) The Court dismissed Counts VI, VII and VIII as to all moving defendants with prejudice; dismissed Count III and the coextensive claims in Count IX without prejudice as to all moving defendants; dismissed Counts IV, V, X and the coextensive claims in Count IX, only as to Defendants Schaffer and Lombardo, without prejudice; and denied the remainder of the motion to dismiss. (ECF No. 73.)

II. DISCUSSION

    A.   <u>Motion to Vacate Default</u>

        1.   <u>Standard of Review</u>

Federal Rule of Civil Procedure 55 provides, in pertinent part:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
> . . .
> (c) Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause . . .

In deciding whether to set aside a default, a district court must consider (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's

culpable conduct. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).

   2. Arguments

Lanigan asserts that the Plaintiffs will not be prejudiced if the Court sets aside the default because this case is still in its initial stage. (Def's Brief, ECF No. 48-1 at 8.) Further, Lanigan claims he has a meritorious defense because the complaint fails to allege facts establishing his personal involvement in any constitutional violation. (Id. at 9.) Finally, Lanigan contends the default was not the result of his culpable conduct. (Id.)

Lanigan submits that the Office of the Attorney General of the State of New Jersey provides legal representation to him as the Commissioner of the New Jersey Department of Corrections ("NJDOC"). (Decl. of Marvin L. Freeman, ECF No. 48-2, ¶3). After service of the summons and complaint, the NJDOC's Central Office obtains documents related to the matter and forwards copies to the Office of the Attorney General. (Id. at ¶5.) There is usually a preliminary investigation into the allegations of the complaint before filing a responsive pleading. (Id. at ¶6.) The Corrections and State Police Section, responsible for providing legal representation for the Commissioner, is experiencing a serious backlog in cases. (Id. at ¶7.) Plaintiffs did not oppose

the motion to vacate default. (Pl. Schartner's Brief, ECF No. 64 at 1, n.1; Pls' Brief, ECF No. 66.)

3. Analysis

First, the Court finds no prejudice to Plaintiffs by setting aside default because the case has not proceeded beyond the responsive pleading stage. See Dambach v. U.S., 211 F. App'x 105, 109 (3d Cir. 2006) (finding no prejudice to Plaintiffs where defaults were entered not long after the filing of the complaints, and Defendants moved to vacate the defaults shortly after entry.) Second, Lanigan has set forth a potentially meritorious defense of failure to plead his personal involvement in the misconduct alleged in the Second Amended Complaint. See Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 123 (3d Cir. 1983) (vacating default judgment where the defendant set forth a potentially meritorious defense.) Third, Lanigan's conduct of filing a responsive pleading two days after the deadline is not culpable, in light of his counsel's heavy caseload in providing legal representation to the Commissioner. Therefore, pursuant to Fed. R. Civ. P. 55(c) and for good cause, the Court sets aside the entry of default against Lanigan.

B. Lanigan's Motion to Dismiss

1. NJCRA Claims

The NJCRA provides, in part:

7

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State ... may bring a civil action for damages and or injunctive or other appropriate relief.

N.J. Stat. Ann. §10:6-2(c).

The New Jersey Civil Rights Act is analogous to 42 U.S.C. § 1983 in that it creates a private right of action for violation of civil rights secured by the New Jersey Constitution, the laws of the state of New Jersey, and the Constitution and laws of the United States. See Gormley v. Wood-El, 218 N.J. 72, 97 (N.J. 2014) ("Section 1983 applies only to deprivations of federal rights, whereas N.J.S.A. 10:6-1 to 2 applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws.") "[C]ourts in this district have generally interpreted the NJCRA to be coextensive with its federal counterpart." Estate of Lydia Joy Perry ex rel. Kale v. Sloan, Civ. No. 10-4646 (AET), 2011 WL 2148813, at *2 (D.N.J. May 31, 2011) (citing Jefferson v. Twp. of Medford, 2010 WL 5253296, at *13 (D.N.J. Dec. 16, 2010); Celestine v. Foley, 2010 WL 5186145, at *6 (D.N.J. Dec. 14, 2010); Chapman v. New Jersey, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009); Slinger v. New Jersey, 2008 WL 4126181, at *5 (D.N.J. Sept. 4, 2008), rev'd in part on other grounds, 366 F. App'x 357 (3d Cir. 2010)).

The parties have not distinguished any claims under the NJCRA from their counterparts under § 1983 for the purpose of this motion to dismiss. The Court will apply precedent regarding § 1983 claims to the parallel claims under the NJCRA.

### 2. Eleventh Amendment Immunity

Lanigan argues that, in his official capacity, he is entitled to Eleventh Amendment immunity for claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). (Def's Brief, ECF No. 48-1 at 11-13.) Plaintiffs oppose Lanigan's motion to dismiss his official capacity claims only with respect to his claims for injunctive relief. (Pls' Brief, ECF No. 66 at 5.)

The Eleventh Amendment to the United States Constitution provides: "the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of any foreign state." Furthermore, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Therefore, a suit against a state official's office is no different from a suit against the state, and is barred by the Eleventh Amendment, unless Congress abrogates sovereign immunity or the state consents. See Kentucky v. Graham, 473 U.S. 159,

9

169-70 (l985) (the Eleventh Amendment prohibits lawsuits for damages against a state official in his or her official capacity).

Congress has not abrogated Eleventh Amendment immunity for suits under § 1983. Quern v. Jordan, 440 U.S. 332, 338-29 (1979) (citing Edelman v. Jordan, 415 U.S. 651 (1974)). The State of New Jersey has not consented to be sued under 42 U.S.C. § 1983 or the NJCRA. Brown v. State, 442 N.J. Super. 406, 425-26 (App. Div. Sept. 11, 2015). Thus, the Court dismisses the § 1983 and NJCRA claims for damages against Lanigan in his official capacity, based on Eleventh Amendment immunity.

The Supreme Court has held, "we often have found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72 (1996) (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)). "[W]here prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 276-77 (1997) (citing Willcox v. Consolidated Gas Co. of New York, 212 U.S. 19, 40 (1909). Therefore, to the extent any § 1983 and NJCRA claims against Lanigan survive the 12(b)(6) motion to dismiss, the Court denies Lanigan's motion to dismiss the

official capacity claims against him for prospective injunctive relief.

### 3. Failure to State a Claim under 42 U.S.C. § 1983 and the NJCRA

Lanigan contends that the § 1983 and NJCRA claims against him in his individual capacity should be dismissed because Plaintiffs have failed to allege his personal involvement in any constitutional violation. (ECF No. 48-1 at 13-17.) Lanigan notes that the only mention of him in the Second Amended Complaint[1] is in paragraph 12, which states:

> Defendant, Gary M. Lanigan, serves as Commissioner of the New Jersey Department of Corrections, and is responsible for overseeing the management and operation of all state prisons and county jails, including inspections of the Cape May County Correctional Center and establishing restrictions on its admission of new inmates.

(Pl. Schartner's Brief, ECF No. 64 at 16.)

Plaintiffs, however, maintain that the Second Amended Complaint contains sufficient factual allegations against Lanigan to state a claim under § 1983. (Pl. Schartner's Brief, ECF No. 64; Pls' Brief, ECF No. 66.) Plaintiffs rely on the general allegations regarding the conditions of the CMCCC and on Lanigan's statutory duties as the Commissioner of the NJDOC, pursuant to N.J.S.A. 30:1B-6; 30:1B-10; 30:8-57; 30:8-58; 10A31-

---

[1] (Second Am. Compl., ECF No. 30.)

11

1 *et seq.* (Pl. Schartner's Brief, ECF No. 64 at 3-12; Pls' Brief, ECF No. 66 at 13.) Plaintiffs conclude:

> Any argument that [Lanigan] is unaware of the Cape May County Correctional Center's willful and continuous disregard of the requisite minimum standards it must maintain is undercut by the fact that Defendant is required (1) to have personal contact with the facility and be informed of the condition and welfare of inmates, and (2) visit and inspect the facility at least semiannually. See N.J.S.A. 30:1B-7.

(Id. at 13.)

In reply, Lanigan argues that his personal involvement cannot be established by merely citing to his statutory duties. (Def's Reply, ECF No. 67 at 2.) Instead, Plaintiffs must plead facts establishing that Lanigan had direct knowledge of facts related to the alleged constitutional violations at CMCCC, or that he established a policy or custom that caused the constitutional wrongs. (Id. at 2-3.)

### a. Rule 12(b)(6) Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), courts may dismiss a complaint for failure to state a claim upon which relief may be granted. A plaintiff need only present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Palakovic v. Wetzel, 854 F.3d

209, 219 (3d Cir. 2017)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (alteration in original)).

"'[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citation and internal quotation marks omitted). A claim is facially plausible if the factual content "'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. Courts assessing the sufficiency of a complaint on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) should first determine the elements a plaintiff must plead to state a claim, and second identify allegations that are no more than conclusions, which are not entitled to the assumption of truth. Palakovic, 854 F.3d at 220 (quoting Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (internal quotation marks omitted) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). Third, courts should assume well-pleaded factual allegations are true and "then determine whether they plausibly give rise to an entitlement for relief.'" Id. (quoting Iqbal, 129 S.Ct at 1950.)

    b.    Analysis

To state a claim for relief under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) the deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Supervisors are not liable for the unconstitutional conduct of their subordinates under § 1983. Iqbal, 556 U.S. at 676. Therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior").

In the Third Circuit,

> "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

Santiago, 629 F.3d at 129, n.5.

Plaintiff's § 1983 claims and parallel NJCRA claims arise under the First,[2] Eighth[3] and Fourteenth[4] Amendments to the

---

[2] Plaintiffs allege Defendants violated their First Amendment right to practice the essential elements of their religion. (Second Am. Compl., Count IV.) "The threshold question in any First Amendment . . . case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion. See Robinson v. Superintendent Houtzdale SCI, ---F. App'x---, 2017 WL 2627917, at *3 (3d Cir. 2017) (per curiam) (citing Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. June 19, 2007)). "'When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" Garraway v. Lappin, 490 F. App'x 440, 445 (3d Cir. 2012) (quoting Turner[v. Safely], 482 U.S. [78,] 89 [1987].

Plaintiffs also allege Defendants violated their First Amendment right to petition to redress grievances. (Second Am. Compl., Count VI.) "'[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.'" Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 387 (2011) (quoting Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 896-897 (1984)). To establish a First Amendment violation based on denial of the right to access the courts, a plaintiff must have suffered an actual injury, such as the dismissal of a complaint or the inability to file a complaint. Lewis v. Casey, 518 U.S. 348, 351, 354 (1996).

[3] In Count II, Plaintiffs allege the overcrowded and unsanitary conditions at CMCCC violate the Eighth Amendment rights of sentenced inmates. (Second Am. Compl., Count II.) In Count III, Plaintiffs allege the denial of adequate hygiene products, toilet paper, and clothing to female sentenced inmates violates the Eighth Amendment. (Id., Count III.) The Eighth Amendment protects convicted and sentenced prisoners from cruel and unusual punishment. Hubbard v. Taylor, ("Hubbard I") 399 F.3d 150, 164 (3d Cir. 2005). To state an Eighth Amendment claim based on conditions of confinement, the prisoner must allege facts indicating "that prison officials acted with deliberate indifference that deprived him/her of 'the minimal civilized measure of life's necessities.'" Id. at 164-65 (quoting Wilson v. Seiter, 501 U.S. 294, 298-88 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Some conditions of confinement may establish an Eighth Amendment violation "in

15

Constitution. In the Second Amended Complaint, Plaintiffs allege Lanigan is responsible for overseeing the management and operation of all state prisons and county jails, including CMCCC; and he must inspect the facility and establish restrictions on its admission of new inmates. (Second Am. Compl., ECF No. 30, ¶12.) These allegations are insufficient to establish the first theory of supervisory liability, a policy,

---

combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. Wilson, 501 U.S. at 304.

[4] In Count I, Plaintiffs allege the overcrowded and unsanitary conditions at CMCCC violate the Fourteenth Amendment rights of pretrial detainees. (Second Am. Compl, ECF No 30.) In Count III, Plaintiffs allege pretrial detainees are not provided adequate feminine hygiene products or toilet paper, resulting in the inmates being forced to wear dirty clothing until clean laundry is provided, in violation of the Fourteenth Amendment. (Id.) The Due Process Clause of the Fourteenth Amendment protects pretrial detainees against "punishment." Hubbard I, 399 F.3d at 1558 (citing Bell v. Wolfish, 441 U.S. 520 (1979)). The Court must determine whether the Defendants acted "'for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" Id. at 158 (quoting Bell, 441 U.S. at 538-39). Unless there is an expressed intent to punish, the court considers whether there is an alternative rational purpose and whether the condition is excessive in relation to that purpose. Id.

In Count V, Plaintiffs allege Defendants denied the Fourteenth Amendment right to equal protection under the law of Muslim inmates. (Id.) To state an equal protection claim, a plaintiff must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class, such as religious affiliation." Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016).

practice or custom which directly caused the constitutional harm. To state a claim under this theory, a plaintiff must identify:

> a specific supervisory practice or procedure that [the supervisor] failed to employ and . . . that (1) the existing custom and practice without that specific practice or procedure created an unreasonable risk of [the constitutional violation alleged] (2) [the supervisor] was aware that this unreasonable risk existed, (3) [the supervisor] was indifferent to that risk, and (4) [the subordinate's constitutional tort] resulted from [the supervisor's] failure to employ that supervisory practice or procedure.

Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1999).

The Second Amended Complaint does not allege any specific supervisory practice or procedure that Lanigan failed to employ or that he was aware of an unreasonable risk of any constitutional violation based on the existing customs and practices.

Under the second theory of supervisory liability, Plaintiffs did not plead sufficient facts suggesting Lanigan had knowledge of or acquiesced in any of the constitutional violations alleged under the First, Eighth or Fourteenth Amendments. Plaintiffs have not alleged when Lanigan inspected CMCCC or that any of his inspections revealed the unconstitutional conditions alleged in the Second Amended Complaint. Further, Plaintiffs have not alleged that Lanigan

17

received any reports about any of the conditions alleged in the Second Amended Complaint. Therefore, Plaintiffs have not alleged sufficient facts to state a supervisory liability claim under § 1983 against Lanigan.

Dismissal should be without prejudice unless amendment is inequitable or futile. Grayson v. Maview State Hosp., 293 F.3d 103, 113 (3d. Cir. 2002). Count VI of the Second Amended Complaint will be dismissed with prejudice as to Lanigan because amendment is futile. Even if Plaintiffs could plead facts to establish Lanigan's supervisory liability, they cannot establish actual injury to state a First Amendment access to courts claim. See Lewis v. Casey, 518 U.S. 343, 351, 354 (1996) (an actual injury, such as the dismissal of a complaint or the inability to file a complaint, must be alleged to state a claim under the First Amendment right of access to courts.) This is because Plaintiffs are not precluded from filing a civil rights action, pursuant to 42 U.S.C. § 1997e(a), if the prison's grievance procedure was unavailable to them, as alleged. See 42 U.S.C. § 1997e(a); Ross v. Blake, 136 S.Ct. 1850, 1860 (2016) (interference with an inmate's pursuit of relief renders the administrative process unavailable). Therefore, amendment of Count VI is futile, and Count VI will be dismissed with prejudice.

III. CONCLUSION

For the reasons discussed above, the Court grants Lanigan's motion to dismiss[5] and dismisses Counts I, II, III, IV, V and IX without prejudice. The Court dismisses Count VI with prejudice. Plaintiffs' claim for prospective injunctive relief against Lanigan is dismissed without prejudice because Plaintiffs have not alleged a colorable § 1983 claim against him.

An appropriate Order follows.

                                          s/Renée Marie Bumb
                                          RENÉE MARIE BUMB
                                          United States District Judge

Dated: August 15, 2017

---

[5] In his brief, Lanigan discussed only Plaintiffs' failure to state a claim under § 1983 and the parallel claims under the NJCRA. (Def's Brief, ECF No. 48-1.) Therefore, the Court does not address Counts VII, VIII, and X, alleging violation of the Americans with Disabilities Act, the Rehabilitation Act, and the New Jersey Law Against Discrimination.